UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

KATHY R. MOORE, aka KATHY R.                          Case No. DG 14-03740
HERMAN, aka KATHY R. HERMAN                           Chapter 13
TRUST,                                                Hon. Scott W. Dales
                    Debtor.

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

Chapter 13 debtor Kathy R. Moore ("Debtor") filed her chapter 13 plan (DN 14), and a single plan amendment (DN 21) (collectively the "Plan"). The holder of the second mortgage, AM Solutions 1, LLC ("AM Solutions"), filed an objection to confirmation of the Plan. After several adjourned confirmation hearings, the court set the valuation dispute for an evidentiary hearing which took place in Grand Rapids, Michigan on October 23, 2014. The following constitutes the court's findings of fact and conclusions of law in connection with the contested confirmation hearing pursuant to Fed. R. Civ. P. 52 made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014(c).

The court has jurisdiction over the Debtor's case pursuant to 28 U.S.C. § 1334(a), and the United States District Court has referred this case and related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). A confirmation hearing is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). As a result, the court has statutory and constitutional authority to resolve the dispute notwithstanding the concerns expressed in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011), and elsewhere.

Among other provisions of the Plan, the Debtor proposes to strip off the junior lien of AM Solutions on the grounds that the value of the property commonly known as 3287 North Riverwood Drive, in Twin Lake, Michigan (the "Property"), is less than the senior lien held by the first mortgagee, MMS Mortgage Services, Ltd.  AM Solutions filed its objection to the Plan premised largely on its view that the value of the Property exceeds the debt secured by the senior lien.

At prior hearings in this matter, the chapter 13 trustee has recommended confirmation, indicating through counsel that he is satisfied the Plan is feasible, was proposed in good faith, affords creditors not less than they would receive in a liquidation proceeding under chapter 7, and generally meets the other statutory requirements.  In addition, the Trustee is evidently satisfied that the Debtor is dedicating all of her projected disposable income to the repayment of claims.

For its part, the court previously scrutinized the Plan (as amended), reviewed the docket, and was satisfied that the Plan comports with § 1325 and the Bankruptcy Code more generally, except for the valuation dispute which required an evidentiary hearing.

Therefore, the only issue for decision is whether the value of the Property securing the first and second mortgage exceeds the amount of the first mortgage.  If the first mortgage fully encumbers the property, the Plan may strip off AM Solutions's junior lien in accordance with *In re Lane*, 280 F.3d 663 (6th Cir. 2002), and similar authorities.[1]

---

[1] *See, e.g., In re Phillips*, 224 B.R. 871 (Bankr. W.D. Mich. 1998).  More recently in this district, the court has treated the strip off proceeding as a hearing to value security under Fed. R. Bankr. P. 3012 (a contested matter under Fed. R. Bankr. P. 9014), rather than a proceeding to invalidate a lien (an adversary proceeding under Fed. R. Bankr. P. 7001).  *See In re Fuller*, 255 BR 300 (Bankr. W.D. Mich. 2000).  AM Solutions has not objected to resolving the dispute in this fashion, perhaps because the rules applicable in contested matters provide virtually the same protections available in an adversary proceeding, especially with respect to pre-hearing discovery. *Id.*

At the hearing, the parties agreed that the first mortgagee has a claim against the Property in the amount of $166,321.00 as reflected in the Plan, and that if the value of the Property exceeds that amount by even a penny, the Debtor could not strip off the lien of AM Solutions.

Each party presented an appraiser and stipulated to the admission of the respective appraisers' appraisal reports and curriculum vitae. Both appraisers used the sales comparison approach, naturally avoiding the cost and income approach given the nature of the Property as residential real estate. The witnesses were each qualified to offer opinions by their training, education and experience, *see* Fed. R. Evid. 702, and each testified credibly and capably.

The Debtor's appraiser, Mr. Carter W. Whiting, testified that he prepared his report by assembling public records and information, visiting the Property, inspecting the interior and exterior, and researching comparable properties in the vicinity. According to Mr. Whiting, as of June 1, 2014, the Property is worth $160,000.00. *See* Exhibit 2.

AM Solutions's appraiser, Mr. Scott A. Packer, approached the valuation task in a similar manner, reviewing public records and researching comparable properties, although he did not inspect the interior of the Debtor's home, instead viewing only the exterior of the front of the structure.[2] In his appraisal report, Mr. Packer opined that the Property was worth $210,000.00, using the sales comparison approach. *See* Exhibit A. When, on cross examination, the Debtor's counsel successfully challenged several assumptions he made about the Property and its

---

[2] During the hearing on the Debtor's Motion for Order to Show Cause which the court conducted by telephone on October 16, 2014, the court learned that AM Solutions's initial appraiser did inspect the Property inside and out and did evidently prepare an appraisal report. For reasons unknown to the court, however, AM Solutions eschewed any reliance on the prior appraiser's report and, in fact, refused on grounds of privilege to share the report with the Debtor's counsel. Drawing an adverse inference might suggest that the initial appraiser's report favored the Debtor's position. Regardless, at the pretrial hearing on October 16, 2014, the court granted the Debtor's request to prevent Mr. Packer from conducting an interior inspection of the home given (1) the fact that AM Solutions never filed a motion seeking entry or a formal request under Fed. R. Civ. P. 34; and (2) the oral request at that hearing came too late to permit the appraiser to prepare the report and the Debtor's counsel to review it. In short, the court declined to give the creditor's appraisers two bites at the apple.

condition,[3] he reduced his valuation estimate slightly, to approximately $190,000.00 — still higher than the lien of the first mortgagee.

Having carefully considered the testimony and appraisal reports of both experts, and crediting the testimony of both, the court nevertheless finds Mr. Whiting's valuation more persuasive for several reasons. First, Mr. Whiting's appraisal experience is almost exclusively in the relevant market (Muskegon County) whereas Mr. Packer conducts much of his appraisal business in the Grand Rapids area. Second, whereas Mr. Whiting has appraised approximately three hundred Muskegon County residences each year for the last 30 years, Mr. Packer, in contrast, has appraised approximately thirty-two over the last few years. Mr. Whiting's experience impressed the court more favorably than Mr. Packer's in connection with this particular Muskegon-based assignment. Third, and perhaps the most persuasive distinguishing feature, is the fact that Mr. Whiting actually entered and inspected the Property, visiting each of the above-grade rooms and the basement, observing and photographing particular features. This gave him valuable insight into the condition of the Property which he regarded as "average to good" in terms of quality of construction, though adversely affected by deferred maintenance and lower quality finishes. He pointed out, as the photographs included in his report confirmed, that several of the rooms have water damage on the ceiling and, in other particulars, rooms are to some extent unfinished —even seventeen years after construction.

Both appraisers agreed, as they must, that the condition of the Property naturally would affect the value. Mr. Packer was obviously handicapped in his appraisal by limiting his interior inspection to that which was visible from the road using his binoculars. This method of inspection strikes the court as unseemly and unorthodox.

---

[3] For example, Mr. Packer misapprehended the condition of the basement (which he assumed, contrary to fact, it was partially finished), the general condition of the interior of the home (water-damaged and to some extent unfinished), and the number of bedrooms (he assumed, four bedrooms when in fact there are three).

Finally, although the two appraisers did have a comparable property in common (2424 Riverwood), Mr. Packer's appraisal relied too heavily on sales transactions that had not yet closed. As he candidly conceded on cross examination, a listing price does not necessarily reflect the value because real estate agents tend to ask for a higher price than the buyer and seller ultimately settle on. Commonsense supports this concession.

For the foregoing reasons, the court finds that the Debtor's Property is worth $160,000.00. Because the parties agreed that the senior lien secures a debt in the amount of $166,321.00, which exceeds the value of the Property, the court finds that the Plan properly proposes to strip off AM Solutions's junior lien.

After resolving this remaining impediment to confirmation in favor of the Debtor, the court is prepared to confirm the Plan as amended.

NOW, THEREFORE, IT IS HEREBY ORDERED that the chapter 13 trustee shall submit a text order in his usual fashion confirming the Debtor's Plan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Kathy R. Moore, April A. Hulst, Esq., Brett N. Rodgers, Esq., Chapter 13 Trustee, Allen J. Dyer, Esq., and Jeffrey K. VanHattum, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 24, 2014**



_____
Scott W. Dales
United States Bankruptcy Judge